S93P0548. OSBORNE v. THE STATE.
(430 SE2d 576)

CLARKE, Chief Justice.

This is a case in which a death sentence has been imposed. The appellant, Curtis Osborne, was convicted by a Spalding County jury of the murder of Arthur Lee Jones and Linda Lisa Seaborne. The two victims were found in an automobile by the side of a dirt road. Both had been shot through the head. After investigation, Osborne was arrested, and eventually admitted shooting the victims, claiming that Jones had reached toward the floor for a weapon. However, the crime scene evidence, including powder burns and blood spatters, showed

---

that Jones had been sitting upright when he was shot by a gun whose muzzle was only an inch from his skull.

Although the murder weapon was not recovered, ballistics examination of the bullets showed that the murder weapon had been a Ruger single-action .357 revolver firing Winchester .357 magnum copper-wash, wad-cutter bullets. Bullets identical in brand and type to the murder bullets were found in Osborne's home, and his parents admitted owning a .357 Ruger that was now missing.

The evidence supports the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[1]

1. It is well settled that death-penalty qualification of prospective jurors is not improper. *Blankenship v. State*, 258 Ga. 43 (1) (365 SE2d 265) (1988) and cits.

2. There was no abuse of discretion in the admission in evidence of allegedly cumulative, gruesome photographs of the deceased victims. *Hicks v. State*, 256 Ga. 715 (13) (352 SE2d 762) (1987).

3. The state exercised five of its allotted ten peremptory challenges to strike black prospective jurors. Two blacks served on the jury as selected. Osborne accused the prosecutor of discriminating racially in his exercise of peremptory challenges. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Because of the prosecutor's disproportionate exercise of strikes against blacks, "the trial court correctly sought the prosecutor's explanation for his exercise of strikes." *Davis v. State*, 263 Ga. 5, 7 (10) (426 SE2d 844) (1993).

The prosecutor explained the five peremptory challenges at issue here as follows:

> The first juror was a diabetic who took medicine that made her drowsy. Osborne's attorney had represented her in a real estate transaction. She was almost 80 years old and seemed forgetful and unable to understand some of the questions.
>
> Osborne's attorney knew the second juror's son and referred to him by his nickname.
>
> The third juror was the only juror on the panel who knew Osborne. Moreover, the prosecutor had information that the juror's brother had been convicted of burglary.
>
> The fourth juror testified that she was totally disabled from a disease similar to carpal tunnel syndrome, but later

---

[1] The crime occurred on August 6, 1990. The trial began on August 5, 1991 and ended on August 19, 1991. A motion for new trial was filed and denied at her hearing on December 14, 1992. The case was docketed in this court on January 5, 1993, and argued orally April 12, 1993.

testified that her hobbies included embroidery and playing Nintendo. The prosecutor felt that these hobbies were inconsistent with a disease that causes numbness and pain in the hands. Moreover, the prosecutor contended she was hesitant in her answers to the death-penalty qualification questions, although he concedes this hesitation is not apparent from a reading of the transcript.

The final juror testified that he was opposed to the death penalty, although his antipathy was not sufficiently strong to disqualify him for cause. Also, he knew Osborne's brother.

As we stated in *Hall v. State*, 261 Ga. 778, 780 (2) (a) (415 SE2d 158) (1991):

A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike.

For the most part, the prosecutor's suspicions were reasonable. A prosecutor does not act unreasonably when he is concerned about personal or professional relationships between prospective jurors and the defendant or his attorney, see, e.g., *Davis v. State*, supra, 263 Ga. at 8; *Hall v. State*, supra 261 Ga. at 780, or when he is suspicious of a prospective juror whose close relatives have been in trouble with the law, see *Foster v. State*, 258 Ga. 736 (2) (374 SE2d 188) (1988), or when he strikes a juror who has expressed a strong reluctance to impose a death sentence. Ibid.

A closer question presents itself concerning the exclusion of the fourth of the five jurors at issue here. See *Williams v. State*, 262 Ga. 732 (1) (426 SE2d 348) (1993). However, as we noted in *Gamble v. State*, 257 Ga. 325, 327 (357 SE2d 792) (1987):

A court charged with the duty of determining whether the prosecutor has rebutted a prima facie case may be less troubled by one relatively weak explanation for striking a black juror when all the remaining explanations are persuasive than where several of the prosecutor's proffered justifications are questionable. Similarly, a weak prima facie case may be rebutted more readily than a strong one.

Taking into consideration the overall strength of the prosecutor's explanations, the fact that the record does not demonstrate that similarly-situated white jurors were accepted by the state, and the fact that the defendant, the victim, and some of the state's important witnesses were black "tend[s] to undercut any motive to exclude [blacks]

from the jury," *Hernandez v. New York*, ___ U. S. ___ (111 SC 1859, 1872, 114 LE2d 395) (1991), the trial court was authorized to conclude that the prosecutor's explanations were sufficiently race neutral to overcome Osborne's accusation of racial discrimination in the exercise of peremptory challenges. *Hill v. State*, 263 Ga. 37, 43 (9) (427 SE2d 770) (1993).

4. Osborne raises two issues concerning the state's use at trial of his pretrial statements. First, he contends the initial *Miranda* warnings were deficient because the police omitted to tell Osborne that if he asked for an attorney "no questioning would take place outside the presence of counsel unless he initiated it himself." (Quote is from appellant's brief.) See *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981) (holding that once an accused asserts his right to counsel, police-initiated interrogation must cease).

An examination of the record shows that while the police did not use the exact language urged as necessary by Osborne, he was clearly advised that he had a right to confer with an attorney, that he had a right not to be questioned in the absence of his attorney, and that he could exercise his rights at any time.[2] These warnings were sufficient. See *Duckworth v. Eagan*, 492 U. S. 195 (109 SC 2875, 106 LE2d 166) (1989).

Osborne also complains that when the sheriff interrogated Osborne the next day, he merely reminded him of his rights instead of restating them to Osborne. Further, after Osborne agreed in this interview to help the police search for the murder weapon, a deputy talked to Osborne during the ensuing search effort without re-advising him of his rights, or reminding him of them.

On the day of his arrest, Osborne was Mirandized three times. He signed a written waiver. These warnings and waiver had not grown "stale" by the next day when the sheriff reminded him of his rights and elicited from Osborne an acknowledgment of the latter's understanding of his rights. *Moten v. State*, 231 Ga. 642 (203 SE2d 527) (1974). Compare *Biddy v. Diamond*, 516 F2d 118 (5th Cir. 1975) (warnings not stale after 12 days). The statements made by Osborne to the sheriff and later to a deputy during the unsuccessful hunt for the murder weapon, in which Osborne willingly participated, were properly admitted.

5. The jury found as a statutory aggravating circumstance that

---

[2] Osborne was advised:
1. I have the right to remain silent. 2. Anything I say can be used against me in a court of law. 3. I have a right to talk to a lawyer and have him present with me while I am being questioned. 4. If I cannot afford to hire a lawyer, one will be appointed to represent me before any questioning, if I wish. 5. I can decide at any time to exercise these rights and not answer any questions or make any statements.

the murder of Linda Lisa Seaborne was committed while the defendant was engaged in the commission of another capital felony, to wit: the murder of Arthur Lee Jones. OCGA § 17-10-30 (b) (2). The evidence supports this finding. OCGA § 17-10-35 (c) (2).

6. We do not find that the death sentence was imposed as the result of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1). The similar cases listed in the Appendix support the imposition of a death sentence for the murder of Linda Lisa Seaborne, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3).

*Judgment affirmed. All the Justices concur, except Benham, J., who concurs in the judgment only with respect to Division 3.*

APPENDIX.

*Hightower v. State*, 259 Ga. 770 (386 SE2d 509) (1989); *Lee v. State*, 258 Ga. 762 (374 SE2d 199) (1988); *Lonchar v. State*, 258 Ga. 447 (369 SE2d 749) (1988); *Frazier v. State*, 257 Ga. 690 (362 SE2d 351) (1987); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Finney v. State*, 253 Ga. 346 (320 SE2d 147) (1984); *Putman v. State*, 251 Ga. 605 (308 SE2d 145) (1983); *Wilson v. State*, 250 Ga. 630 (300 SE2d 640) (1983); *Burden v. State*, 250 Ga. 313 (297 SE2d 242) (1982); *Rivers v. State*, 250 Ga. 303 (298 SE2d 1) (1982); *Rivers v. State*, 250 Ga. 288 (298 SE2d 10) (1982); *Mathis v. State*, 249 Ga. 454 (291 SE2d 489) (1982); *Waters v. State*, 248 Ga. 355 (283 SE2d 238) (1981); *Peek v. State*, 239 Ga. 422 (238 SE2d 12) (1977); *Young v. State*, 239 Ga. 53 (236 SE2d 1) (1977).

DECIDED JUNE 21, 1993.

*Johnny B. Mostiler, Arleen E. Gardenhire*, for appellant.

*Johnnie L. Caldwell, Jr.*, District Attorney, *William T. McBroom III, Daniel A. Hiatt*, Assistant District Attorneys, *Michael J. Bowers*, Attorney General, *Susan V. Boleyn*, Senior Assistant Attorney General, *Peggy R. Katz*, Staff Attorney, for appellee.