## A96A1334. DOBBS v. THE STATE.
### (477 SE2d 657)

ANDREWS, Judge.

Felipe Dalton Dobbs appeals his convictions of four counts of burglary and one count of theft by receiving,[1] contending that his confession was improperly admitted, denial of his motion to suppress was error, the evidence was insufficient, evidence of an uncharged crime was improperly admitted, and the court exhibited a "prosecutorial manner."

1. We consider the challenge to the sufficiency of the evidence first. In so doing, we view all the evidence in the light most favorable to the verdict, keeping in mind that an appellate court does not weigh the evidence or determine witness credibility, but only determines the legal sufficiency of the evidence under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Brewer v. State,* 219 Ga. App. 16, 17 (1) (463 SE2d 906) (1995).

So viewed, the evidence was that the homes of King (Count 2), Luttrell (Count 3), and Drake (Count 5) were all burglarized between November 18, 1993 and January 4, 1994. Also, on December 29, 1993, a black 1992 GMC pickup truck and a trailer full of lawn equipment were taken from the driveway of Mabry during the night (Count 6). All the homes were located in the same general area near Lawrenceville and Lilburn. Drake's home had previously been burglarized in 1991 (Count 1).

During the night of September 20, 1991, the Drakes' Swarthmore Drive home was broken into while they were sleeping. Entry was obtained through the locked back door, although no damage to the door was noted. A camera, Mr. Drake's wallet containing $1,200

---

[1] Dobbs was convicted of, but not sentenced for, the theft of the truck involved in the theft by receiving count.

cash, his keys and watch, his wife's and daughter's purses, and a book bag were taken. All these items were taken from the kitchen/bar area. When the theft was discovered, the Drakes found the two purses, with all money missing, by the side of their garage, along with the book bag. Nothing else was ever recovered from this burglary.

On January 4, 1994, Ms. Drake's car window was forced open and her garage door opener removed from the car which was in the driveway. The garage door was opened with the opener and entry made into the house through the locked door into the kitchen. Again, no damage was noted to the door. The family was asleep upstairs and, from the kitchen/bar area, Mr. Drake's watch, new camera and a GE camcorder, his wife's and daughter's purses, and jewelry belonging to him and his wife were taken, along with a set of keys. His ring had the initials "R. D." engraved in it and the keyring had a picture of him and Ms. Drake on it. The garage door opener was also taken.

On November 18, 1993, on Shannon Way in Lawrenceville, the King home was entered during the night through a living room front window. The screen had been removed and the window was left up. From the kitchen/dining room area, Ms. King's purse containing her credit cards and checkbook, her cellular phone, a compact disc player and over 300 compact discs were stolen. The keys to her 1993 Dodge Stealth were in her purse and the car was also stolen.

The Luttrell home on Freeman Drive in Lilburn was broken into on December 27, 1993. The garage had been entered through a pedestrian door and there were no signs of forced entry. A 1991 Suzuki 250, partially disassembled, was taken from the garage by rolling it out the pedestrian door. A second motorcycle was also rolled out of the garage, but was left outside.

On December 28, 1993, Mabry woke to find his black 1992 GMC extended cab pickup missing. Attached to the truck was a trailer full of lawn equipment used in Mabry's landscaping business. The truck had been parked in his driveway and Mabry did not give anyone permission to take the truck. A spare set of keys was kept in the truck cab. There was a pair of pruners in the back seat of the truck. Mabry saw the pickup after it was recovered from Dobbs' apartment parking lot and the rear window had been broken to gain entry. His trailer with most of the lawn equipment still on it was retrieved from another apartment complex parking lot near Dobbs' apartment.

On January 9, 1994, an officer investigating a traffic accident on Jimmy Carter Boulevard discovered that one of the drivers, Marty Apgar, was driving with a suspended license and was wanted on a Walton County warrant for failure to appear. Upon taking Apgar into custody, the officer discovered a small bag in his jacket. The bag contained jewelry, including a woman's watch, opal ring and earrings,

and a man's ring with the initials "R. D." Also, Apgar was wearing Drake's watch and Drake's checkbook was found in his vehicle. Marijuana, along with a pipe and "roaches," was also found.

Apgar initially stated that the jewelry belonged to his girl friend, but she was called to the scene and denied it was hers. Apgar denied that the larger quantity of marijuana was his or that he knew the checkbook was in the vehicle. He said a friend must have left it, but when asked for the name, requested an attorney. Apgar was charged with theft by receiving[2] and identified Dobbs as the one who sold him the jewelry. Apgar had known Dobbs for three or four years and knew he lived at the Sweetwater Glenn Apartments. Apgar said he met Dobbs at a gas station on January 6, 1994 and Dobbs sold him the jewelry for $60 or $75. Dobbs told Apgar it came from a theft. During the two week period before Apgar's wreck, Dobbs told Apgar he stole a black GMC truck and Apgar saw Dobbs in this truck at Dobbs' apartment complex. Dobbs also told Apgar that he had taken a red Dodge Stealth, which Apgar also saw at the apartment complex. Apgar and Dobbs rode by a trailer full of equipment and Dobbs asked Apgar if he knew anybody who might want it. Dobbs told him that he had a camcorder and compact discs, and asked him if he knew anybody who might want a good dirt bike. Dobbs told Apgar he was going to keep the camcorder.

Officer Mattox verified that the GMC truck and trailer with equipment were where Apgar said they would be, off Sweetwater Road. Apgar told Mattox that he had seen a GE camcorder in Dobbs' apartment, told Mattox where Dobbs' apartment was located and that Dobbs and Cliff were staying there with the tenant's permission because the tenant was in jail and did not want to lose the apartment. Mattox verified with the apartment management that this was true. Based on this information, Mattox obtained a search warrant for the apartment, stating that there was reason to believe that the fruits of a crime, i.e., the camcorder, its bag, and instructions, were in the apartment. The warrant was issued on January 20, 1994 and executed the same day.

The officers entered the apartment and secured Dobbs, who was running toward the rear of the apartment. Officer Parrish read Dobbs his *Miranda* rights from her pocket card and sat with him during the search. The officers swept the apartment to make sure there were no other individuals present. While checking a hallway closet, an officer, observed by Mattox, found two sets of keys on top of the water heater. One set had a leather key fob containing a number of

---

[2] Apgar pled guilty to the theft by receiving charge for the items taken in the second Drake burglary.

keys, including two General Motors keys. These keys fit the GMC pickup taken from Mabry. The other set had a picture of victim Drake and his wife on it. Since Mattox was working that case, he recognized the picture. Two garage door openers were found, one in a video recorder bag located in Dobbs' bedroom. The second one was found in a drawer in that room. Also seized was a pair of pruners. The GE camcorder was not found and the video recorder bag was discovered to belong to Dobbs' sister.

Dobbs was taken to the police station where Officers Mattox and Parrish interviewed him. Before commencing the interview, Mattox went over a written *Miranda* waiver form with Dobbs, who initialed each right and signed the form. The interview was taped, but Dobbs made no incriminating statements. When Dobbs requested an attorney, the interview was stopped and he was transported to jail.

On February 14, 1994, Sgt. Davis was on duty at the jail and was asked by Dobbs to contact Mattox and ask him to come to the jail because Dobbs wanted to confess. Mattox went to the jail and recorded an interview with him, recording over the January 20 interview. He reminded Dobbs of his rights and verified that Dobbs had requested that he come. Dobbs acknowledged his right to an attorney and even stated that his attorney had told him to "wipe the slate clean," although she had not told him that. Dobbs said he did not want an attorney present. He then gave Mattox details that would only have been known to the perpetrator of the two Drake burglaries, the King and Luttrell burglaries, and the theft of Mabry's 1992 GMC pickup and trailer full of equipment. In addition to taping the interview, Mattox hand wrote portions of the confession, which Dobbs signed. That document also contained an acknowledgment of Dobbs' *Miranda* rights. In addition to his own name, Dobbs signed "Lucifer, Jesus Christ."

The evidence was legally sufficient. *Jackson v. Virginia,* supra; *Bigham v. State,* 222 Ga. App. 353, 354 (474 SE2d 254) (1996); *Quinn v. State,* 222 Ga. App. 423, 424 (1) (474 SE2d 297) (1996).

2. The second enumeration is that the court erred in denying Dobbs' motion to suppress because there was insufficient probable cause for the warrant and items not listed therein were seized.

(a) The totality of the circumstances analysis is used in evaluating the affidavit. *State v. Stephens,* 252 Ga. 181 (311 SE2d 823) (1984). In so doing, we consider not only the information produced at the hearing on the motion, but also the evidence produced at trial. *Sanders v. State,* 235 Ga. 425, 431 (2) (219 SE2d 768) (1975), cert. denied, 425 U. S. 976; *Davis v. State,* 216 Ga. App. 580, 581 (1) (455 SE2d 115) (1995).

We conclude, as did the trial court, that the magistrate was authorized to make the determination that probable cause existed

and the warrant should issue. *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990); compare *Grier v. State*, 266 Ga. 170, 172 (2) (465 SE2d 655) (1996), with *Gary v. State*, 262 Ga. 573, 577 (422 SE2d 426) (1992). "'"The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (Cits.)' *Munson v. State*, 211 Ga. App. 80, 83 (438 SE2d 123) (1993)." *Davis v. State*, 266 Ga. 212, 213 (465 SE2d 438) (1996).

(b) Dobbs also argues that, because the only item specified for seizure in the warrant was the GE camcorder taken from the second Drake burglary, the seizure of the keys and other items which were introduced was error.

Contrary to Dobbs' argument, when an officer sees in plain view items which are evidence of the commission of crimes other than that referred to in the warrant, such items may be seized, even if not specified in the warrant. *Horton v. California*, 496 U. S. 128 (110 SC 2301, 110 LE2d 112) (1990) (inadvertence not a necessary element of plain view); *Galbreath v. State*, 213 Ga. App. 80, 83 (2) (443 SE2d 664) (1994); *Nichols v. State*, 210 Ga. App. 134, 136 (3) (435 SE2d 502) (1993); *Jefferson v. State*, 199 Ga. App. 594 (405 SE2d 575) (1991).

This ground presents no basis for reversal.

3. Dobbs' first and third enumerations deal with the admission into evidence of Dobbs' confession and will be considered together.

(a) The third enumeration is that the State "did not present sufficient evidence to the trial court to show (1) that the statement was freely and voluntarily given and to show (2) that the defendant knowingly and intelligently waived his *Miranda* rights."[3]

The state must demonstrate the voluntariness of a confession by a preponderance of the evidence. *Bright v. State*, 265 Ga. 265, 280 (5) (b) (455 SE2d 37) (1995); *LaRue v. State*, 171 Ga. App. 371, 372 (319 SE2d 468) (1984). "A trial court's conclusions of fact and credibility following a *Jackson-Denno*[4] hearing are to be accepted unless clearly erroneous. [Cits.]" *Yorker v. State*, 266 Ga. 615, 617 (4) (469 SE2d 158) (1996); *Swinney v. State*, 217 Ga. App. 657, 659 (3) (458 SE2d 686) (1995).

Two pre-trial hearings were held concerning the statements made by Dobbs. At the first, held on January 26, 1995 in conjunction with a hearing on the motion to suppress, only Investigator Mattox testified. The only statement considered at that hearing was the interview with Dobbs on February 14, 1994 at the jail. During Mat-

---

[3] Other grounds argued in the brief, including OCGA § 17-7-210, are either not enumerated as error or were not raised below and they are not further addressed. *Unden v. State*, 218 Ga. App. 463, 466 (5) (462 SE2d 408) (1995).

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

tox's testimony, no reference was made to the January 20 interview at the police station.

At the conclusion of the January 26 hearing, the court stated, regarding Dobbs' tape-recorded confession of February 14, 1994, "I'm not going to suppress the statement and will not rule it inadmissible, but am not ruling that each and every part of the tape is proper to be played to the jury.[5] But as a general ruling, I am going to rule that the interview is admissible. Now, whether any or all of the tape is admissible is . . . premature to rule on that, because I don't think a foundation has been laid at this point in time, to admit it into evidence, and it's not the proper time to lay the foundation, either. I find that it does not violate the Fourth Amendment or other applicable provisions of the law, which would make it — Fourth Amendment — so back on your search and seizure. But I find that it is not violative. Maybe it's the 6th Amendment, come to think of it. Anyway I'm not going to suppress the statement given on the 14th of February, 1994."

Counsel for Dobbs objected to the February 14 transcript coming into evidence and requested that the tape itself be made available. After the prosecutor had reviewed the tape, he became aware of the taping over of a portion of the January 20 interview.

A second hearing was held on February 16, 1995, at which Dobbs requested that the matter be reopened and the prior hearing testimony be incorporated for purposes of the second hearing. At that point, Dobbs sought to suppress both the January 20 statement and the February 14 statement, on the ground that "one has a bearing on the other and the second one is fruits of the first one. . . . It's my position that the statement that was not provided to me [January 20] is exculpatory, I have a right to it, and I don't believe . . . Officer Mattox remembers enough about the statement, in order to provide me the substance thereof. . . . There is a previous statement where my client was taken to the Gwinnett County Police Headquarters, after he had asked for an attorney, and where they continued to interrogate him. . . . I believe that I have a right to that statement. If they cannot furnish me the contents of that statement I believe I have a right to have the first and second statement suppressed. Because the second statement is the fruits of the first statement. . . . I believe it [January 20 statement] is exculpatory, because the details were provided in that statement, that lead to the second statement and my client's details. . . . It's my position that he gave those details to my client in the first interview."

Investigator Mattox was thoroughly cross-examined by Dobbs

---

[5] Portions of the statement referred to other non-similar crimes to which Dobbs confessed.

again and the state called Investigator Parrish to supplement the record. Although Mattox exhibited a gross lack of preparation during the first hearing, resulting in misunderstandings of the course of events, we do not find clearly erroneous the trial court's conclusion that Dobbs was properly *Mirandized* before the first interview and that questioning ceased upon his request for counsel. Additionally, since Dobbs contends that interview was exculpatory, he will not be heard to then say it was involuntary, especially considering that there was no objection made at trial when the waiver of rights form was introduced into evidence.

There is no dispute that the February 14 interview was initiated by Dobbs. Even assuming that, at the January 20 interview, Dobbs adequately asserted his right to counsel and to remain silent, this would not preclude the officer's renewed interrogation if Dobbs initiated further communication with him and waived the rights he had invoked. *Hopkins v. State*, 263 Ga. 354, 357 (3) (434 SE2d 459) (1993); see *McKoon v. State*, 266 Ga. 149, 151 (2) (465 SE2d 272) (1996); *Underwood v. State*, 218 Ga. App. 530, 533 (2) (462 SE2d 434) (1995).

After coming to the jail at Dobbs' request, Mattox verified that Dobbs had called him and "reminded him of his [*Miranda*] constitutional rights." This is reflected in the handwritten statement which Dobbs signed. Such a reminder is adequate under these circumstances. *Osborne v. State*, 263 Ga. 214, 217 (4) (430 SE2d 576) (1993). Additionally, the full *Miranda* warnings that Dobbs received twice on January 20 and after which he signed the written waiver had not grown "stale" during the three intervening weeks. Id.

The court's conclusion that the February 14 statement was voluntary and would not be suppressed was not clearly erroneous.

(b) The first enumeration is that the court erred "by allowing the state to introduce only the inculpatory portions of the statement, over the defense's objection to only portions of the statement being presented by the state, thereby forcing the defendant to risk putting [his] character in issue in order to show the context of the statement, the manner it was given, and [his] attitude and demeanor . . . during the statement."

Succinctly put, Dobbs contends that, if the statement was going to be introduced by the state, all of it, including those portions which would put his character in issue, *must* be played by the state during its case. As reflected in the record, by defense counsel, "I can either show them the context of the statement and then put my client's character in evidence, or not show them the context [of the admissions]. I mean both choices stink. . . . If I'm forced to play it, yes, Judge, I believe it will [put his character in issue]. THE COURT: But you think if [the prosecutor] plays it, it doesn't put his character in

issue? [Counsel]: Correct. That is simply putting the statement in the context in which it's given."

Of course, the identity of the party putting other crimes committed by the defendant into evidence does not determine whether or not the evidence places an accused's character in issue. See generally *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988). For the state to do as Dobbs argued it must, could have resulted in a mistrial. *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991); *Sabel v. State*, 250 Ga. 640, 643 (5) (300 SE2d 663) (1983).

The state could not be forced to introduce all of the statement. As acknowledged by Dobbs, any part of the statement which he chose to introduce was available for that purpose and could have been explored on cross-examination. See *Long v. State*, 22 Ga. 40 (1857); see *Simpson v. State*, 213 Ga. App. 143, 145 (2) (444 SE2d 115) (1994). There was no error.

4. Dobbs contends that admission of evidence involving a prior auto theft by him was improper because the prior offense was not sufficiently similar to the Mabry theft.

Slade testified that on November 21, 1987, around 9:00 p.m. his 1983 black Chevrolet S-10 pickup truck was taken from his driveway off Peachtree Industrial Road in Gwinnett County. The keys had been left inside the truck on the floorboard. The truck was later pursued by officers and wrecked after midnight. Dobbs, who was 17 at the time, was driving and admitted taking the truck.

Dobbs' contention that the crime was not sufficiently similar to the Mabry theft fails. As pointed out by the trial court, both thefts involved black pickups taken from driveways in the same general area and both were taken by using keys found in them. See generally *Felker v. State*, 252 Ga. 351 (314 SE2d 621) (1984). The lapse of seven years between the incidents goes to the weight and credibility of such testimony, not its admissibility. *Gilstrap v. State*, 261 Ga. 798, 799 (1) (410 SE2d 423) (1991); *Braddock v. State*, 208 Ga. App. 843, 844 (2) (432 SE2d 264) (1993); *Stephens v. State*, 205 Ga. App. 403, 404 (1) (422 SE2d 275) (1992).

5. The error alleged in the final enumeration was not the subject of an objection below and will not be considered here for the first time. *DeFreese v. State*, 232 Ga. 739, 746 (14) (208 SE2d 832) (1974); *Jones v. State*, 189 Ga. App. 232 (1) (375 SE2d 648) (1988).

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED OCTOBER 29, 1996.

*Karen E. Beyers*, for appellant.
*Daniel J. Porter, District Attorney, David K. Keeton, Assistant*

District Attorney, for appellee.