A02A0515. KNIGHTON v. THE STATE.
(563 SE2d 917)

BLACKBURN, Chief Judge.

Following a jury trial, John Knighton appeals his convictions for rape, aggravated assault, aggravated sodomy, possession of a weapon during a crime, and terroristic threats, contending that, because he was not properly informed of his *Miranda* rights, evidence derived from the search of his home and several self-incriminating statements he made were improperly admitted into evidence. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the record shows that, on the evening of May 26, 1998, the victim stopped by an auto parts store where Knighton worked as she was walking to a friend's house. It was hot that night, and the victim asked Knighton if she could have a glass of water. Knighton took her inside the building, where he lived in several back rooms, gave her water, and pulled a gun on her when she tried to leave. Knighton then held the victim against her will, put handcuffs on her wrists and ankles, and raped her repeatedly for two days. On the second day of her captivity, the

---

victim, still naked and handcuffed, managed to escape through a window into a locked and fenced lot of junked cars adjacent to the auto parts store. There, she climbed on top of one of the cars to avoid being mauled by guard dogs handled by Knighton and screamed for help.

Police arrived at the scene, restrained the guard dogs, and released the victim. Shortly thereafter, Knighton arrived at the scene, and he was immediately approached by Officer William Ricker. Officer Ricker patted Knighton down for weapons, and Knighton spontaneously told Officer Ricker that they would need his keys to get inside the gate. He also told Officer Ricker that if he was not stopped someone would end up getting hurt. Officer Ricker then secured Knighton in the back of his patrol car, but he did not ask Knighton any questions about the victim or the rape.

Officer Ricker next informed Detective Paradise, a member of the sex crimes unit, that Knighton was on the scene, and Detective Paradise got into Officer Ricker's car and sat in the backseat where Knighton was still detained. Knighton immediately told Detective Paradise, without prompting, that he wanted to get caught and that he had gone too far this time. Detective Paradise then informed Knighton of his *Miranda* rights. Although she did not read these rights verbatim off of a card, Detective Paradise informed Knighton that she was not his friend, that he was better off if he "shut up" until he could talk to an attorney, that she would use anything he said against him, that he had a right to an attorney, and that, if he could not afford one, one would be provided for him. When Detective Paradise told Knighton that he was entitled to an attorney, he responded that he needed a psychiatrist because he was sick.

Subsequently, Knighton voluntarily led the police into his home, showed them where he had hidden the victim's clothes, and led them to the rooms where he had held the victim hostage. The victim positively identified Knighton as her assailant both at the scene and in court. The evidence shows that Knighton remained lucid throughout his encounter with the police, and he was not under the influence of either drugs or alcohol.

Knighton now contends that his incriminating statements and the subsequent search were improper and inadmissible because he was not properly informed of his *Miranda* rights. Knighton's main contention is that his right to remain silent was not properly explained to him. We disagree.

As an initial matter, the incriminating statements made by Knighton at the scene were not subject to *Miranda*, as they were voluntarily made and were not in response to interrogation by police.

*Miranda* warnings are required to protect a suspect being interrogated in police custody. The State is not required to show that *Miranda* warnings were given before introducing evidence of a custodial statement which was not obtained through interrogation but was volunteered by the suspect. Accordingly, the issue is whether the custodial statement[s] made by [Knighton] without the benefit of *Miranda* warnings [were] admissible as . . . volunteered statement[s] or should have been excluded as . . . statement[s] obtained through police interrogation.

(Citations omitted.) *Kennedy v. State*.[1] As the statements at issue here were blurted out by Knighton before any questioning began, *Miranda* simply is not applicable to them, and they were properly admitted into evidence.

Moreover, the *Miranda* warnings which were given to Knighton following these statements were adequate. The transcript shows that, although the police did not use the exact language which Knighton propounds as necessary for his *Miranda* warnings, he was sufficiently informed of his rights. Specifically, Knighton argues that he was not adequately apprised of his right to remain silent. To the contrary, Detective Paradise went even further in this case, affirmatively warning Knighton not only that he did not have to talk to her, but also that he would be better off saying nothing to her. See generally *Osborne v. State*.[2]

While Detective Paradise's warnings were sufficient in this case, we note, however, that the better practice would have been to administer the *Miranda* warnings by reading them from the *Miranda* cards carried by most police officers. By doing so, questions such as the ones raised in this appeal may be circumvented.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED APRIL 10, 2002.

*Henry A. Hibbert*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[1] *Kennedy v. State*, 246 Ga. App. 236, 237 (2) (540 SE2d 229) (2000).
[2] *Osborne v. State*, 263 Ga. 214 (430 SE2d 576) (1993).