## A98A1693. BURGOS v. THE STATE.
### (505 SE2d 543)

ELDRIDGE, Judge.

The defendant, Hector Perez Burgos, was convicted by a Fulton County jury of theft by taking (auto) and DUI and was acquitted of two counts of kidnapping. The defendant was sentenced on the theft by taking to ten years to serve and on the DUI to twelve months to serve consecutive to the ten years with a $1,000 fine. The trial court denied the defendant's motion for new trial on January 28, 1998, and the defendant appeals.

In the light most favorable to the verdict, the evidence shows the

[7] See *Southern Horizons Aviation v. Farmers & Merchants Bank &c.*, 231 Ga. App. 55 (497 SE2d 637) (1998).

following: On December 3, 1995, Steven Highfill and Tara Glynn were passengers in a limousine driven by Glen Williams. They arrived at Club Anytime, located at 1055 Peachtree Street, Atlanta, Fulton County, between 2:30 and 3:00 a.m. Upon arriving, Williams parked the limousine in front of the club and exited the vehicle leaving the doors unlocked and the motor running so that the passengers would have power in the back. After stopping at the passenger window to get money from Highfill, Williams walked up to the front door of the club to try and gain entrance for his passengers.

While Williams was walking back toward the limousine, the defendant got into the driver's seat of the limousine and drove off with Highfill and Glynn in the back seat. Williams banged on the front passenger window of the limousine as it was leaving in an attempt to get the defendant to stop. Once the defendant drove the car away from Club Anytime, Williams ran across the street to a pay phone and called the police.

Highfill and Glynn testified that they heard the driver's side door shut and saw Williams running after the vehicle. At the intersection of Peachtree Street and Fourteenth Street, the limousine hit a taxicab, knocking the taxicab into a telephone pole and rendering the driver unconscious for a few minutes. Highfill was thrown to the floor of the limousine, but was only slightly injured. Glynn was thrown forward into the front seat and broke her arm. The limousine did not stop or slow down after the collision, but accelerated to a higher rate of speed. Highfill testified that it felt as if the limousine was traveling at "highway speeds."

After the first collision, Glynn began to scream and unsuccessfully tried to get her seatbelt on. Highfill, however, was able to secure his seatbelt. The limousine made a sharp right-hand turn onto Seventeenth Street and continued at a high rate of speed until it crashed into an embankment at the end of Seventeenth Street at Peachtree Circle. Glynn was thrown forward again, and her face hit the divider behind the driver's seat. Glynn was hospitalized for two weeks and required surgery three times on her arm and once to reconstruct her nose.

The distance that the limousine traveled from the club until the second wreck was about five and one-half blocks. Officer Terry Joyner of the City of Atlanta Police Department testified that when he arrived at the scene of the second collision, the defendant was unconscious in the driver's seat and smelled of alcohol. The defendant testified that when he got off work at 11:30 p.m. on December 2, 1995, he started drinking and consumed two to three bottles of Hennessy liquor.

1. In his first enumeration of error, the defendant alleges that the trial court erred in granting the State's motion in limine to

exclude testimony from an expert witness, Dr. Tommie Richardson, regarding voluntary intoxication in support of the defendant's lack of intent defense.

"In reviewing a trial court's decision on a motion in limine, we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them." (Citation and punctuation omitted.) *Davis v. State*, 226 Ga. App. 83, 84 (485 SE2d 508) (1997).

So construed, the evidence shows the following: Dr. Richardson is a medical doctor who is board-certified in family medicine and is certified by the American Society of Addiction Medicine. His current specialization is in family practice and addiction medicine. On June 6, 1996, Dr. Richardson interviewed the defendant for approximately 45 minutes to an hour. According to Dr. Richardson, the defendant informed him in the interview that he did not remember taking the limousine and the two subsequent collisions because he had been consuming alcohol all day and suffered a blackout; that in the past, people had told him that he had done things when he was drinking that he could not remember; that he had been diagnosed with post-traumatic stress syndrome unrelated to alcohol; and that he had been hospitalized on four occasions and that three of these hospitalizations were for matters other than alcohol abuse. Dr. Richardson further testified that he had not examined the defendant's previous medical records; that he did not know what the defendant had been treated for previously and could only state that, based on the medications defendant said he was given, the defendant was probably treated for some type of psychiatric disorder; and that such medications were often used to treat post-traumatic stress syndrome. Dr. Richardson further testified that the patient informed him that, when he drank, he heard voices and that he had been seeing and hearing things in his jail cell.

Dr. Richardson stated that he had not performed any tests on the defendant to determine if the defendant had organic brain damage. The only test he performed on the defendant was a mental status exam which determined the defendant's mental functioning at the time he spoke with the defendant. Based on this test, Dr. Richardson stated that the defendant was "oriented times four," i.e., that he knew the day, the date, where he was, and Dr. Richardson's name. Dr. Richardson further stated that the defendant's thought processes were goal-directed; that he did not appear to have suicidal or homicidal ideation; that his insight and judgment were intact; that his immediate, recent and remote memory was good; and that he appeared to know right from wrong.

Dr. Richardson's determination that the defendant had a blackout at the time of this incident was based solely on the defendant's statements that he could not remember taking the limousine and the subsequent collisions and that, in the past, he had been told he had done things when drinking which he could not remember. Dr. Richardson further admitted that it was possible that the defendant could be lying about the blackout episodes and loss of memory of this incident. Dr. Richardson testified that when a person has a blackout, brain cells die and the memory contained therein is lost, and that if a person has enough blackouts they can lead to dementia, i.e., the inability to function appropriately from a mental standpoint. Dr. Richardson did not know if the defendant had dementia or if the defendant had organic brain damage from chronic alcohol abuse.

"In *Horton v. State*, 258 Ga. 489, 491 (8) (371 SE2d 384) (1988), the Georgia Supreme Court determined that voluntary intoxication was not a defense to a crime unless such intoxication had resulted in the alteration of brain function so as to negate intent. Even then, the brain function alteration must be more than temporary." (Punctuation omitted.) *Sydenstricker v. State*, 209 Ga. App. 418, 420 (433 SE2d 644) (1993). Any clinical signs described by Dr. Richardson are the same as those of any individual who has consumed alcohol to the point of intoxication, i.e., three bottles of Hennessy, and does not have permanent brain damage. A history of alcohol abuse, alcohol abuse on the night of the crime, depression, speculations by the doctor based on defendant's statements about prior medical or psychological treatment, and professed lack of memory, without further clinical and objective signs or testing by diagnostic procedures and psychometric tests, do not demonstrate permanent brain injury.[1] See *Bright v. State*, 265 Ga. 265, 273 (455 SE2d 37) (1995). Moreover, the likelihood of the defendant having permanent brain injury is further negated by Dr. Richardson's testimony that the defendant's thought processes were goal-directed; his insight and judgment were intact; his immediate, recent, and remote memory was good; and he appeared to know right from wrong. See *Bright v. State*, supra at 273.

The defendant has failed to carry the burden of showing that an alteration of his brain function caused by intoxication was more than temporary. See *Couch v. State*, 229 Ga. App. 151 (493 SE2d 577)

---

[1] In order to show permanent brain damage, a defendant must show proof of such permanent impairment by physical and coordination/cognition tests that have been conducted by a neurologist, neurosurgeon, physiological psychologist, learning psychologist, psychiatrist, or other expert witness who can testify as to their clinical and diagnostic findings that evidence of brain damage exists. At a minimum, a defendant must show that either paper and pen tests, motor/cognition tests, or other physical tests show some permanent loss of memory or hand-eye coordination. The better method of showing permanent brain damage would be through a CAT scan, MRI, or EEG.

(1997); *Sydenstricker v. State,* supra at 420. Based upon Dr. Richardson's limited examination, any opinion that he could have presented would have been mere speculation. Therefore, there was no error in the trial court's exclusion of Dr. Richardson's testimony.

2. The defendant asserts that the trial judge erred in denying his written request for a charge on good character.

"The good character of an accused person is a substantive fact, and evidence of such good character should be weighed and considered by the jury in connection with all the other evidence in the case. When there is an appropriate request, a proper instruction should be given in every case where the accused person puts his character in issue." (Citations omitted.) *Braddy v. State,* 172 Ga. App. 386, 389 (323 SE2d 219) (1984), aff'd, 254 Ga. 366 (330 SE2d 338) (1985).

The defendant testified that he had never been arrested prior to this incident, and that, once when he woke up, he was told he had been arrested, but he was in a mental hospital. The defendant further testified that he was employed, that he had three children, and that he had served in Vietnam for a year and one-half and was discharged to a hospital for treatment for alcohol abuse and psychiatric problems. The defendant did not state if his discharge was an honorable discharge.

Viewing the defense as a whole, it does not appear that the issue of character played a significant role during the trial. Therefore, even if we deem the defendant's testimony sufficient to raise the character issue, we cannot conclude that the trial court's failure to charge on good character constitutes reversible error. See *Cooper v. State,* 206 Ga. App. 292, 293 (424 SE2d 896) (1992). Compare *Chastain v. State,* 200 Ga. App. 473 (408 SE2d 421) (1991) and *Braddy v. State,* supra (finding reversible error when the trial court found that the defendant's testimony would entitle the State to introduce evidence of bad character, but nevertheless refused to charge the jury on good character).

Further, in light of the overwhelming evidence against the defendant, we find it highly probable that any error did not contribute to the verdict. See *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

3. The defendant further alleges that the trial court erred in imposing a sentence which was grossly disproportionate to the nature of the crime and the circumstances of the defendant. The defendant argues that his sentence violates the Eighth Amendment's guarantee against cruel and unusual punishment. The defendant does not contend that the sentence parameters fixed by the legislature are unconstitutional.

"The Eighth Amendment protects against cruel and unusual punishment, a concept which prohibits, among other things, arbi-

trary and disproportionate sentences. *Lambeth v. State*, 257 Ga. 15, 16 (354 SE2d 144) (1987). Unless a sentence 'is so overly severe or excessive in proportion to the offense as to shock the conscience,' a legislatively authorized punishment does not ordinarily exceed the constitutional bound. *Gordon v. State*, 257 Ga. 439, 440 (360 SE2d 253) (1987). It could, if the court abused its discretion in imposing a sentence which is excessive and disproportionate in a specific case." *McClure v. State*, 218 Ga. App. 365 (460 SE2d 884) (1995).[2]

The sentence imposed by the trial court falls within the statutory limits set by the legislature. See OCGA §§ 40-6-391 (c); 16-8-12 (a) (4) (A). "Consecutive sentences are permitted where separate and distinct crimes are charged. OCGA § 17-10-10; *Hart v. State*, 137 Ga. App. 644 (3) (224 SE2d 755) (1976)." *McClure v. State*, supra at 366. Under the facts and circumstances of this case, especially in light of the property damage and the personal injuries, the defendant's sentence was not so overly severe or excessive as to shock the conscience. This enumeration is without merit.

4. Finally, the defendant alleges the evidence was insufficient to support the verdict. We disagree. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence." (Citations and punctuation omitted.) *Curtis v. State*, 208 Ga. App. 720, 721 (431 SE2d 719) (1993). The evidence presented at trial was sufficient to authorize the jury to find the defendant guilty of DUI and theft by taking (auto) beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED AUGUST 17, 1998.

*Suparna Malempati*, for appellant.
*Paul L. Howard, Jr., District Attorney, Cari K. Johanson, Assistant District Attorney*, for appellee.

---

[2] "A statute is presumed to be valid and constitutional until the contrary appears. . . . [Cits.]" *Williams v. Ragsdale*, 205 Ga. 274, 277 (2) (53 SE2d 339) (1949). A presumption arises when a defendant is sentenced within the statutory limits set by the legislature that such sentence does not violate the Eighth Amendment's guarantee against cruel and unusual punishment. Such presumption remains until a defendant sets forth a factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience. See *Bowers v. Hardwick*, 478 U. S. 186 (106 SC 2841, 92 LE2d 140) (1986) (Powell, J., concurring).