## S89P0171. GARY v. THE STATE.
(389 SE2d 218)

SMITH, Presiding Justice.

Carlton Gary was convicted by a jury in Muscogee County on three counts each of murder, rape and burglary. He was sentenced to death on each of the murder counts.[1]

1. Between September 11, 1977 and April 19, 1978, eight elderly women were raped in their homes. One woman survived; the other seven were strangled to death. Seven of the victims lived in the Wynton area of Columbus. One victim lived two miles away, but had attended choir practice in Wynton the evening she was murdered.

Police had no viable suspects in the case until 1984, when a gun stolen from the Wynton area in 1977 was discovered in Michigan — a consequence of that state's gun registration laws — in the possession of Carlton Gary's cousin. After further investigation, Gary was arrested for burglary on May 3, 1984. His fingerprints matched those taken from the scenes of four of the murders.

Gary admitted to law enforcement officers that he was present at seven of the crime scenes (the eighth he could not remember), but claimed he was only a burglar. He blamed the murders on another. Further investigation revealed that in other instances in New York and in South Carolina, Gary had committed violent crimes and blamed others. For example, he raped and murdered an 89-year-old woman in her home in Albany, New York in 1970. His fingerprints were found at the crime scene. Gary claimed one John Mitchell committed the murder. Mitchell, however, was acquitted by a jury. In an-

---

[1] The defendant was arrested on May 3, 1984. He was indicted the next day. After numerous pre-trial hearings, and a change of venue, the case was tried in Muscogee County by a jury that had been selected in Spalding County. The trial began on August 11, 1986 and concluded on August 27, 1986. A motion for new trial was filed on September 25, 1986 and was denied on October 18, 1986. The case came to this court for review. We remanded the case to the trial court for a hearing on the question of ineffectiveness of counsel. The case was redocketed in this court on June 22, 1989, and the case was argued orally on September 12, 1989.

other New York crime involving rape and burglary, Gary admitted only to being a "lookout" and blamed the rape on another. In all these cases, no evidence other than Gary's own statements and testimony supported his claim that another person was involved in the crime with him.

The defendant does not question the sufficiency of the evidence, and we find that it supports the conviction. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Trial counsel, August F. Siemon, represented the defendant pro bono. His first move upon entering the case was to secure the dismissal of the defendant's court-appointed attorneys. Later, he sought additional court-appointed counsel. The trial court denied the motion after Siemon stated: "There is no question in my mind that I have the personal resources to provide representation to [the defendant]." We note that the defendant was represented by two additional attorneys (acting pro bono) during much of the pre-trial proceedings.

The defendant also sought funds for forensic and investigative assistance. These requests for funds were denied.

During the pre-trial proceedings and at the outset of the trial, attorney Siemon stated to the trial court that, because of the lack of funds and time, he was not prepared to try the case. The case proceeded to trial over his objection. When the case came to this court on appeal, we exercised our discretion under the Unified Appeal Procedure to remand the case to the trial court for a hearing to determine whether, for any reason, including lack of funds, the defendant was denied effective assistance of counsel. See Rule IV (B) (1) of the UAP, Ga. Court & Bar Rules at 9-15.

On remand, the trial court appointed two attorneys to represent the defendant on the question of effectiveness of trial counsel. However, the defendant obtained the services of attorney Frank L. Derrickson, who, as had trial counsel, represented the defendant pro bono. The issue came on for hearing. The defendant refused to waive his attorney-client privilege as to any of his three trial attorneys, and none of them testified on behalf of the defendant. Lead trial attorney Siemon was called as a witness by the state; however, the defendant invoked his attorney-client privilege to prevent his attorney from answering *any* questions about tactical decisions he made while representing the defendant.

(a) The defendant contends the court erred by refusing to dismiss his two court-appointed attorneys after attorney Derrickson entered the case on remand. However, although these two attorneys were not dismissed, they did not actively participate in, or interfere with, the proceedings on remand. Hence, there was no denial of the defendant's right to choose his own counsel. Cf. *McKaskle v. Wiggins,* 465 U. S. 168 (104 SC 944, 79 LE2d 122) (1984) (court may appoint

standby counsel for pro se litigant over his objection, so long as standby counsel's role is suitably limited).

(b) The defendant contends he was denied effective assistance of counsel at trial. The trial court found as follows:

> In this case ample opportunity was given this defendant through a hearing before this court with counsel of his own choosing (and additional counsel, if he chose so to avail himself) to urge any and all possible errors affecting the trial or prejudicing the defendant. . . . This defendant refused to accept the opportunities provided him. For reasons probably known only to itself the State elected to go further than even the defendant in the course of the hearing and attempted to elicit from defense counsel, August F. Siemon, reasons for various avenues of conduct. To each and every material question the defendant asserted his privilege not to have his counsel testify. This is true even though the defendant was made inescapably aware by this court that this was his opportunity to have these possible issues litigated. It is therefore the finding of this court that as to those issues addressed during the hearings on remand that the defendant knowingly, intelligently and voluntarily waived those issues after having been repeatedly advised by the court that his conduct would amount to such a waiver. Therefore these issues are resolved adversely to Carlton Gary.

A defendant cannot be forced to litigate an issue. Cf. *Morrison v. State*, 258 Ga. 683 (3) (373 SE2d 506) (1988). The defendant was given an opportunity to prove he was denied effective assistance of counsel. He declined to do so. We agree with the trial court that he knowingly, voluntarily and intelligently has waived any issue of effectiveness of trial counsel.

(c) In his post-remand brief, the defendant continues to claim, as he did in his original appellate brief, that the trial court's refusal (prior to the original trial) to appoint additional counsel or to provide funds for forensic and investigative assistance was an abuse of discretion, see *Isaacs v. State*, 259 Ga. 717 (13) (a) (386 SE2d 316) (1989), and that he was penalized improperly for exercising his right to retain his own attorney pro bono.

The defendant was given the opportunity to prove that the denial of funds for legal, investigative, and forensic assistance prejudiced his defense; i.e., that because of the trial court's denial of funds, attorney Siemon could not effectively represent his client. The defendant waived that opportunity, and we need not further address his contentions in this regard.

3. The defendant contends the conditions of his solitary confinement while awaiting trial had an adverse impact on his ability to stand trial. However, not only has this issue been litigated — and relief denied — in a pre-trial habeas corpus petition filed by the defendant on this issue, but also in a special trial to determine his competence to stand trial. The special jury found him competent to stand trial. See OCGA § 17-7-130.

While awaiting his trial, the defendant was held in "administrative segregation" for his own protection. He was in a private cell with a commode, a lavatory, a bunk with mattress, blanket and pillow, a skylight, a television, a radio, and reading materials. He was given extensive visitation privileges. The record does not support the defendant's claim of unconstitutionally harsh conditions of confinement. The special jury's finding that he was competent to stand trial is supported by the evidence.

4. The defendant was caught in an escape attempt in December of 1985. Afterward, he allegedly began behaving in a "bizarre" manner. On March 10, 1986, the day his trial was scheduled to begin, he filed a special plea of incompetence. He was examined by Doctor Jerald Lower, who concluded the defendant was deliberately feigning mental disorder. The defendant claimed he was suffering from sensory deprivation disorder; however, expert testimony was presented at the competence hearing that such condition is associated only with complete sensory deprivation not at all consistent with the condition of the defendant's incarceration.

The defendant contends he was denied due process by the court's refusal to grant him funds for examination by an independent mental health expert. See *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985). We disagree. Nothing before the court reasonably indicated that the defendant's sanity would be a significant factor at trial. The denial of funds was not error.

5. The percentage of black citizens aged 18 and over in Muscogee County is 31 percent. The percentage of black citizens aged 18 and over in Spalding County, to which venue was changed (see fn. 1, supra), is 24.7 percent. The defendant contends the selection of new venue in Spalding County was racially motivated. The circumstances of this case do not establish prima facie that racial discrimination motivated the trial court's decision to change venue to Spalding County.

6. There was no abuse of discretion in the conduct of voir dire. *Curry v. State*, 255 Ga. 215 (336 SE2d 762) (1985).

7. Before trial, the defendant moved to recuse Judge Followill on the ground that his ruling on the motion for change of venue showed he was guilty of racial prejudice. Judge Morgan presided over the hearing on the motion to recuse, and properly denied the motion.

*United States v. Meester*, 762 F2d 867, 884-85 (11th Cir. 1985). The defendant now contends Judge Followill should have been recused because he was a party litigant represented by counsel at the hearing on the motion to recuse. This contention was not raised until more than a year after the hearing and is not timely. *Romine v. State*, 251 Ga. 208 (2) (305 SE2d 93) (1983). Compare *Isaacs v. State*, 257 Ga. 126 (355 SE2d 644) (1987).

8. The defendant was given ample notice of the date of his competency trial.

9. The only surviving victim of the defendant's strangulation attacks testified at trial and identified him as her assailant. The defendant was not entitled to a hearing outside the presence of the jury to determine the admissibility of the testimony of this witness, *Watkins v. Sowders*, 449 U. S. 341 (101 SC 654, 66 LE2d 549) (1981), and her testimony was admitted in evidence properly. *Pruitt v. State*, 258 Ga. 583 (4) (373 SE2d 192) (1988).

10. There was no error in the conduct of the Jackson-Denno hearing or in the admission in evidence of the defendant's pre-trial statements. See, e.g., *Parks v. State*, 254 Ga. 403 (1) (330 SE2d 686) (1985).

11. As noted in Division 1, supra, extrinsic transactions demonstrating the defendant's modus operandi were admitted in evidence. In view of the relevant similarities between the extrinsic transactions and the crimes on trial, the court did not err by allowing their admission in evidence. *Hamilton v. State*, 255 Ga. 468, 471 (339 SE2d 707) (1986).

12. The defendant was not, as he claims, denied the right to present mitigating evidence by the trial court's rulings on funds and travel expenses. Many potential witnesses who had known the defendant during his life were either present at trial or were readily available. The defendant can name no one whose testimony he was unable to secure as a consequence of any ruling by the trial court.

13. The jury found that the three offenses of murder were committed while the offender was engaged in the commission of the offenses of rape and burglary. See OCGA § 17-10-30 (b) (2). The evidence supports these findings. OCGA § 17-10-35 (c) (2).

14. After reviewing the record, including the proceedings on remand, we conclude the sentences of death were not imposed under the influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1). The sentences of death are not excessive or disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. The similar cases listed in the appendix support the imposition of death sentences in this case.

*Judgment affirmed. Clarke, C. J., Weltner, Bell, Benham, Fletcher, JJ., and Judge Charles A. Wofford concur. Hunt, J., disqualified.*

APPENDIX.

*Curry v. State*, 255 Ga. 215 (336 SE2d 762) (1985); *Ross v. State*, 254 Ga. 22 (326 SE2d 194) (1985); *Devier v. State*, 253 Ga. 604 (323 SE2d 150) (1984); *Allen v. State*, 253 Ga. 390 (321 SE2d 710) (1984); *Felker v. State*, 252 Ga. 351 (314 SE2d 621) (1984); *Brown v. State*, 250 Ga. 66 (295 SE2d 727) (1982); *Messer v. State*, 247 Ga. 316 (276 SE2d 15) (1981); *Justus v. State*, 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State*, 246 Ga. 598 (272 SE2d 475) (1980); *Cape v. State*, 246 Ga. 520 (272 SE2d 487) (1980); *Thomas v. State*, 245 Ga. 688 (266 SE2d 499) (1980); *Gates v. State*, 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State*, 244 Ga. 574 (261 SE2d 379) (1979); *Collins v. State*, 243 Ga. 291 (253 SE2d 729) (1979); *Spraggins v. State*, 243 Ga. 73 (252 SE2d 620) (1979); *Davis v. State*, 242 Ga. 901 (252 SE2d 443) (1979); *Johnson v. State*, 242 Ga. 649 (250 SE2d 394) (1978); *Moore v. State*, 240 Ga. 807 (243 SE2d 1) (1978); *Gibson v. State*, 236 Ga. 874 (226 SE2d 63) (1976); *McCorquodale v. State*, 233 Ga. 369 (211 SE2d 577) (1974).

DECIDED MARCH 6, 1990 —
RECONSIDERATION DENIED MARCH 28, 1990.

*August F. Siemon III, Frank L. Derrickson,* for appellant.
*Douglas C. Pullen, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Joseph L. Chambers,* for appellee.