### S98A1810. McDADE v. THE STATE.
(513 SE2d 733)

HINES, Justice.

John M. McDade appeals his convictions for malice murder, aggravated assault, and possession of a firearm during the commission of a crime.[1] For the reasons that follow, we affirm in part and vacate in part.

Spalding County sheriff's deputies were called to the mobile home park residence of McDade and his girlfriend Ann Fuller to investigate a domestic disturbance. The first deputy to arrive observed McDade leaving the front entrance of the residence. Upon entering the home, the deputies found Fuller seated on a sofa, dead from a shotgun wound to the back of the head. McDade was arrested and transported to the Spalding County Jail.

McDade gave several different versions of how Fuller died. In a spontaneous statement to the first deputy to arrive at the scene, McDade said he had left the area, came back, and found Fuller as she was. He then stated that he was outside the home packing his car to move out when he heard a shot, came in, and found Fuller. He also told a neighbor who came to the mobile home shortly after the shooting that Fuller shot herself. Before leaving the scene, McDade told deputies that the shotgun discharged during a struggle after Fuller

---

[1] The crimes occurred on January 6, 1998. On February 3, 1998, a Spalding County grand jury indicted McDade for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime. He was tried before a jury on June 15 and 16, 1998, and found guilty on all counts. On June 16, 1998, he was sentenced to life imprisonment for malice murder, twenty years imprisonment for aggravated assault, to be served consecutively to the term for malice murder, and five years imprisonment for possession of a firearm during the commission of a felony, to be served consecutively to the aggravated assault term; the felony murder conviction stood vacated by operation of law. McDade filed a notice of appeal on June 26, 1998. His appeal was docketed in this Court on August 10, 1998, and submitted for decision without oral argument on October 5, 1998.

pointed the weapon at him. He also stated that it was not supposed to have happened, and that Fuller was shot when the gun inadvertently discharged during an argument.

McDade later told a deputy at the jail that he and Fuller argued, she took his shotgun, went down the street, and shot herself. He later told investigators that after an argument he decided to move out, Fuller convinced him to stay, but they again argued and McDade resolved to leave. Fuller then went into the bedroom and emerged with the shotgun, saying it was his and he should take it with him. When McDade reached for it, Fuller "jerked" the shotgun back and it discharged. When told that the location of Fuller's wound indicated that the shooting could not have happened in that manner, he stated she had shot herself in the mouth. McDade also told two variations of a struggle over the shotgun in which he was holding Fuller down on the couch with one hand and holding the shotgun to her head with the other when it discharged; he stated he did not pull the trigger.

Expert testimony showed that when the shotgun discharged it was loosely pressed against Fuller's head, above and behind her left ear. Additionally, bloodstains showed that she could not have been shot in the position in which she was found, but that she was lying down on the sofa when shot. Smeared blood also indicated her body had been moved.

1. The indictment charged McDade with malice murder "by placing a shotgun to the back of [Fuller's] head and pulling the trigger." It also alleged that McDade committed an aggravated assault "by placing a shotgun to the back of [Fuller's] head and pulling the trigger." McDade contends that the trial court erred by entering separate sentences on the malice murder and aggravated assault counts because the crimes merged.

Although there is no merger as a matter of law, the aggravated assault conviction can merge into the malice murder conviction as a matter of fact. *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). The record shows the evidence used to prove that McDade committed the aggravated assault is the same as that used to prove he committed malice murder. Therefore, the aggravated assault merged into the malice murder as a matter of fact, and the separate judgment of conviction and sentence for the aggravated assault must be vacated. *Fitzpatrick v. State*, 268 Ga. 423, 424 (1) (489 SE2d 840) (1997).

2. The evidence was sufficient to enable the jury to find beyond a reasonable doubt that McDade was guilty of malice murder and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. The court admitted into evidence statements McDade made to deputies after his arrest. McDade challenges the decision to admit

the statements. A trial court's factual and credibility findings as to the voluntariness of a custodial statement are to be accepted unless clearly erroneous. *Raulerson v. State*, 268 Ga. 623, 626 (2) (b) (491 SE2d 791) (1997); *Berry v. State*, 254 Ga. 101, 104 (1) (326 SE2d 748) (1985).

At the hearing on the voluntariness of McDade's statements, both deputies at the scene testified McDade was advised of his rights before being placed in a patrol car. The form McDade signed before his in-jail interview waiving his rights indicated that McDade could not read or write, although it also indicated that he had a ninth grade education. The interviewing deputy testified that he read the form to McDade and ensured that he understood each separately listed right before proceeding to the next. The court made specific findings that, despite McDade's contrary testimony at the hearing, he was advised of his *Miranda* rights before he was placed under arrest, and before beginning custodial interviews after he was jailed, and that he understood those rights. The trial court found that McDade's statements were made freely and voluntarily, without threat of coercion and with no hope of benefit or reward, and the court stated its determinations were made in view of the totality of the circumstances.

McDade contends that in considering whether the statements were admissible, the trial court ignored two of the nine factors listed in *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). However, *Riley* sets forth factors to be considered when a court is faced with statements given by juveniles outside the presence of their parents and its holding does not apply here; McDade was 31 years old at the time of his arrest. See *Hanifa v. State*, 269 Ga. 797, 804 (3) (505 SE2d 731) (1998); *Byrd v. State*, 208 Ga. App. 477, 478 (1) (431 SE2d 134) (1993).

Evidence supported the trial court's specific factual findings, these findings were not clearly erroneous, and there was no error in admitting the statements.

4. The trial court charged the jury on the law of voluntary manslaughter, but did not give either of McDade's requested charges on involuntary manslaughter. Both requested charges referred to McDade committing a lawful act in an unlawful manner. See OCGA § 16-5-3 (b). A requested charge must be "legal, apt and *precisely* adjusted to some principle involved in the case and be authorized by the evidence." (Emphasis in original; punctuation omitted.) *Lane v. State*, 268 Ga. 678, 680 (2) (492 SE2d 230) (1997).

The first request stated that to convict McDade of involuntary manslaughter, the jury "would have to find that the defendant did not intend to kill the deceased, and that the killing was a result of culpable neglect on the part of the defendant in that he carelessly

handled a loaded shotgun, which he knew was easy to discharge, and that such careless handling would result in the death of the deceased." This charge was properly rejected as it is not a correct statement of law or properly adjusted to the evidence; such behavior by McDade would constitute the crime of reckless conduct, OCGA § 16-5-60 (b), and therefore could not serve as a basis for a charge on involuntary manslaughter by a lawful act under OCGA § 16-5-3 (b).

The second request included the language that "the defendant failed to exercise the proper caution and circumspection in attempting to take possession of the shotgun and thereby unintentionally caused the shotgun to be discharged and kill the deceased." Pretermitting whether this request too would be incorrect as describing a crime, the request was not adjusted to the evidence. In the version of events McDade related to investigators in which he was taking possession of the shotgun, it did not discharge as a result of his taking possession of it, but as a result of Fuller's taking possession of it from McDade.

5. The trial court properly rejected McDade's request for a jury charge on accident. McDade's statements to deputies that "I didn't mean to do it" and "it was an accident," do not authorize a charge on the affirmative defense of accident. Nor did any of the versions of events McDade related to deputies support such a charge; either the explanations could not have resulted in Fuller's fatal wound or did not show an absence of a criminal scheme, undertaking, intention, or criminal negligence. See OCGA § 16-2-2; *Davis v. State,* 269 Ga. 276, 279-280 (3) (496 SE2d 699) (1998). Further, the jury was fully charged on the State's burden to prove every element of the crime of murder, including intent. As the jury believed McDade guilty of malice murder, it could not have believed Fuller's death to be the result of an accident. *Tankersley v. State,* 261 Ga. 318, 322 (7) (404 SE2d 564) (1991).

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED MARCH 15, 1999.

*Albert B. Wallace, Stephen B. Wallace II,* for appellant.
*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.