S00P1959. COLWELL v. THE STATE.
(544 SE2d 120)

BENHAM, Chief Justice.

In 1996, Daniel Morris Colwell was charged with numerous offenses arising out of the fatal shootings of Judith and Mitchell Bell in a Sumter County store parking lot. Immediately after a jury found Colwell competent to stand trial, he pled guilty to two counts of malice murder, six counts of felony murder, two counts of aggravated assault, possession of a firearm by a convicted felon, possession of a firearm at a public gathering, and carrying a pistol without a license.[1] In the sentencing trial that was convened five months after the guilty pleas were entered, a second jury found the existence of statutory aggravating circumstances beyond a reasonable doubt and

---

[1] The crimes occurred on July 20, 1996. Colwell was indicted by a Sumter County grand jury on December 2, 1996, for the crimes to which he pled guilty. The State filed written notice of its intent to seek the death penalty on February 14, 1997. The trial on Colwell's competency began on April 20, 1998, and ended on April 23, 1998, with the jury's finding that he was competent to stand trial. Colwell pled guilty to all charges on April 23 upon the conclusion of his competency trial. Colwell's sentencing trial began on September 30, 1998, and the jury fixed Colwell's sentences for each of the murder charges at death on October 13, 1998. In orders filed on October 15, 1998, the trial court imposed eight death sentences for the two malice murder convictions and the six felony murder convictions, two concurrent sentences of twenty years imprisonment for the two aggravated assault charges, and consecutive terms of imprisonment of five years for possession of a firearm by a convicted felon, twelve months for possession of a firearm at a public gathering, and twelve months for carrying a pistol without a license. A motion for new trial, filed on November 12, 1998, and amended on July 7, 1999, was denied in an order filed on November 1, 1999. On November 29, 1999, the trial court granted Colwell's motion for a 30-day extension of time in which to file a notice of appeal. See OCGA § 5-6-39 (a) (1). A notice of appeal was filed on December 30, 1999, and the appeal was docketed in this Court on August 16, 2000. It was orally argued on January 22, 2001.

fixed the penalty for both of the malice murder charges and for each of the six felony murder charges at death. The trial court imposed eight death sentences in accordance with the jury's determination. We affirm as to two of the death sentences, vacate the six convictions and death sentences for felony murder, vacate the convictions and sentences for aggravated assault, and affirm as to the remaining convictions and sentences.

1. The evidence presented at Colwell's sentencing trial showed that Colwell, wishing to die but unable to commit suicide, formulated a plan to kill more than one person in order to secure his own execution. He put his plan in motion on July 20, 1996, when he drove to a store parking lot in Sumter County and approached Mitchell and Judith Bell as they conversed with a friend. Colwell shot Mr. Bell in the back, stood over him as he begged for his life, and shot him in the head. Colwell then shot Mrs. Bell in the head as she lay on the pavement wailing. Colwell left the Bells, got into his car, and drove to the Americus Police Department where he gave a tape-recorded confession. In the tape-recorded statement, which was played for the sentencing jury, Colwell explained that he had purchased a handgun to commit suicide but "didn't have the nerve to pull the trigger to [his] head." He went on to say that he wanted to commit suicide and saw "going to the electric chair" as "a way of dying." After Colwell's counsel presented extensive evidence in mitigation, Colwell testified and told the jury he had committed the murders for the purpose of obtaining a death sentence and that he would kill again if he did not receive the death penalty.

After reviewing the record and transcript of this case, we conclude, with the exceptions set forth below, that the trial court correctly entered judgment on Colwell's guilty pleas and that the evidence presented at the sentencing trial was sufficient to authorize the jury to find the existence of at least one statutory aggravating circumstance for each murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 17-10-30 (b) (2), (7).

2. Colwell's counsel contends that Colwell was improperly found competent to stand trial. Where a defendant's competence is challenged by the defense or appears to be in question at the time of trial, the Constitution of the United States requires that his or her competence be determined. *Drope v. Missouri*, 420 U. S. 162 (95 SC 896, 43 LE2d 103) (1975); *Pate v. Robinson*, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966). The standard to be applied in making that determination is whether the defendant "is capable of understanding the nature and object of the proceedings and is capable of assisting his [or her] attorney with his [or her] defense." *Stripling v. State*, 261 Ga. 1, 2 (401 SE2d 500) (1991). See OCGA § 17-7-130. The extensive evi-

dence presented at Colwell's competency trial supports the jury's finding that he was competent under this standard. Furthermore, our review of the trial record confirms the soundness of the jury's finding of competence, as it appears that Colwell participated intelligently in his trial proceedings. In fact, Colwell's intellectual grasp of his proceedings led to his ultimate decision to allow his counsel to present a vigorous mitigation case in order to increase the likelihood of having possible death sentences affirmed on appeal.

We are mindful of the fact that Colwell likely suffered from a mental disease and was plagued by a desire to die, however, we must acknowledge, as the competency jury and the trial court also did, that Colwell clearly understood the nature and object of his proceedings and that he possessed the intellectual and communication skills necessary to participate in his own case in the manner that seemed best to him.

3. Colwell's counsel contends that the trial court erred by denying Colwell his right to represent himself, by failing to conduct a hearing on Colwell's competence to waive his right to counsel, and by forcing a mixed form of representation upon Colwell. We find no error.

(a) Throughout the competency and sentencing trials, Colwell and his counsel were in fundamental disagreement on the question of whether Colwell should receive the death penalty for his crimes. Fifty-five days before the competency trial, counsel filed a motion to withdraw from representation, asserting an unwillingness to serve as Colwell's "unquestioning mouthpiece. . . ." Counsel withdrew the motion to withdraw ten days later. Immediately after Colwell was found competent to stand trial, the trial court informed Colwell that from that point forward he would control his own defense and permitted him to plead guilty.

A month before the sentencing trial commenced, defense counsel filed a motion to withdraw Colwell's guilty plea. After hearing counsel's arguments about alternative pleas that could have been entered and after the trial court again explained to Colwell that he was in control of his defense, Colwell informed the trial court that he did not wish to withdraw his guilty pleas. Counsel urged the trial court to conduct a hearing on Colwell's competency to control his defense, but the trial court declined to do so.[2]

In a letter written shortly after his counsel filed the motion to withdraw the guilty pleas, Colwell explained to the trial court that he did not believe he needed an attorney and emphatically stated he

---

[2] Ruling from the bench, the trial court stated, "The jury found him competent, he was competent, he entered a plea of guilty, he does not wish to withdraw his guilty plea and I will allow it to stand."

would not have representing him an attorney who was not in agreement with himself and the district attorney. Shortly after Colwell's letter was written to the trial court, counsel once again filed a motion to withdraw. In a hearing held on September 17, 1998, the trial court explained again to Colwell and Colwell's counsel that Colwell would have ultimate authority over most matters in his case. It was decided that counsel should remain on the case, but counsel disagreed strongly with the trial court's beliefs concerning the role of counsel and the extent to which the client could control the case. Counsel also urged the trial court to conduct a hearing on Colwell's competence to control his defense, citing *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975). Colwell informed the trial court that, because he was in control of his case, he was satisfied with his representation.

As voir dire of the prospective sentencing jurors began, the trial court again discussed the matter of representation with Colwell, explaining that Colwell would be in control of his case but adding, at one point, "I don't want to tell you I won't let you represent yourself." When asked by the trial court what he wanted, Colwell responded, "I just wanted to have control [of the case]." In the ensuing discussion, it became clear that Colwell had decided to personally present his view of the case to the jury and to allow counsel to present mitigation evidence. Colwell summed up his decision as follows: "I understand you [the trial court] have given me full control and I understand that I've decided to let my lawyers take control." Another long discussion concerning Colwell's representation took place at the end of voir dire. Counsel explained that Colwell had agreed to let counsel present mitigation evidence, and Colwell confirmed the agreement, explaining that he believed the introduction of mitigation evidence would prevent a reversal of any death sentence he might receive. The sentencing trial proceeded, with counsel presenting a mitigation case and Colwell telling the jury, through his testimony and in writing, that he should receive the death penalty.

(b) Counsel argues on appeal that the trial court violated Colwell's rights under the constitutions of Georgia and the United States by refusing Colwell's request to conduct his case pro se. Having been found competent to stand trial, Colwell was entitled to represent himself at trial upon a request to do so and upon a finding that his decision was knowing and intelligent. Id.; Ga. Const. 1983, Art. I, Sec. I, Par. XII; see *Godinez v. Moran*, 509 U. S. 389 (113 SC 2680, 125 LE2d 321) (1993) (holding that the standards governing competence to stand trial, to plead guilty, and to waive the right to counsel are the same, although the issues of competence and the knowing and voluntary nature of a decision are not the same). However, after the trial court explained to Colwell that he would be in

control of his case and after he learned that any death sentence was more likely to be affirmed on appeal if a mitigation case were presented, Colwell gave his approval to counsel's representation. Colwell, it appears from the record, did not wish to represent himself but, rather, wished to have counsel represent his interests as he perceived them. See *Potts v. State*, 259 Ga. 96, 105 (28) (376 SE2d 851) (1989) (finding that the defendant "withdrew his request after the trial court gave him time to reconsider and reflect on the consequences of self-representation"); see also *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990) (holding that a request to conduct one's trial pro se must be "unequivocal"). Through the long and sometimes heated discussions between the trial court, Colwell, and counsel, Colwell's representation was finally arranged to Colwell's satisfaction. This arrangement properly respected Colwell's right to make the "ultimate decision about" what sort of case to present. *Morrison v. State*, 258 Ga. 683, 685-686 (3) (373 SE2d 506) (1988); see also *Reid v. State*, 235 Ga. 378, 379-380 (1) (219 SE2d 740) (1975) (noting with approval the ethical standard that even those matters generally within the control of counsel should be decided "after consultation with [the] client"). We conclude that the trial court did not force unwanted representation upon Colwell.

Counsel's assertion that the trial court should have conducted a further hearing on Colwell's competence and on the knowing and voluntary nature of his decision about his representation is without merit. Colwell had just been found competent after a lengthy competency trial, and the trial court carefully explained Colwell's rights to him and made repeated and thorough inquiries of him concerning his decisions about his representation and whether those decisions were freely made. As we held in *Wayne v. State*, where the defendant *did* wish to waive his right to counsel, "The record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." *Wayne v. State*, 269 Ga. 36 (2) (495 SE2d 34) (1998) (applying *Faretta*, supra, 422 U. S. 806). Here, the trial court accepted the jury's finding of competence, informed Colwell of his rights, and accepted Colwell's decision to allow counsel to present a mitigation case and to present his own point of view in other ways. Although we note that such an inquiry is not generally required where a defendant elects to face trial *with* the representation of counsel, the trial court's inquiry in this case, which was prompted by Colwell's expressed concerns to the trial court, was sufficient to ensure the knowing and voluntary nature of Colwell's final decision on the nature of his representation.

Counsel argues that a hybrid form of representation was forced upon Colwell, with counsel serving effectively as co-counsel. See *Potts v. State*, 259 Ga. 812, 816 (388 SE2d 678) (1990) (holding that a trial

court may not force co-counsel upon a defendant who wishes to represent himself or herself). This claim is without merit. Although Colwell testified at trial, wrote several letters that were presented to the jury, and directed some of the actions of his counsel, he was acting merely as an involved client who wished to have his own views made known to the jury. By ensuring that counsel respected Colwell's wishes, the trial court did not transform counsel into *co*-counsel, rather, it ensured that counsel served as *Colwell's* counsel. Furthermore, although we do not find that Colwell served as co-counsel, we note that, "although a defendant may not insist on acting as co-counsel, the trial court may . . . allow him [or her] to do so" once he or she has been advised of his or her right to counsel and of the dangers inherent in proceeding as one's own co-counsel. *Hance v. Kemp*, 258 Ga. 649, 650 (1) (373 SE2d 184) (1988).

Counsel argues that the trial court's inquiries into the relationship between counsel and Colwell were improper, especially because the inquiries were made in open court. In light of the circumstances, we find that the trial court's involvement in the attorney-client relationship was appropriate. Counsel has failed to show any evidence in the record that counsel or Colwell ever requested that the trial court's inquiries be made in camera; furthermore, the information revealed to the State during the trial court's inquiries would not have affected the outcome of the case in the slightest. Compare *Brooks v. State*, 259 Ga. 562 (2) (385 SE2d 81) (1989) (holding that a hearing on the indigent defendant's motion for funds for psychiatric assistance should be conducted in camera in order not to disclose the defendant's theory of defense).

4. Contrary to counsel's contention, "[t]his Court's review of death sentences is neither unconstitutional nor inadequate under Georgia statutory law." *Gissendaner v. State*, 272 Ga. 704, 716 (16) (532 SE2d 677) (2000).

5. We disagree with counsel's contention that imposition of the death penalty for the murders Colwell has committed will constitute assisted suicide under Georgia law or under more general conceptual principles.

> Any person who publicly advertises, offers, or holds himself or herself out as offering that he or she will intentionally and actively assist another person in the commission of suicide and commits any overt act to further that purpose is guilty of a felony. . . .

OCGA § 16-5-5 (b). Ignoring the other intricacies of this statute, we conclude that Colwell's execution will not be a "suicide" and, therefore, that the statute is inapplicable. Colwell has been sentenced to

death because of the nature of his crimes, not because of his own desire to die. Furthermore, the jury, not Colwell, has made the final determination that death is the appropriate punishment for his crimes. See *People v. Bloom*, 774 P2d 698, 715 (Cal. 1989). The fact that Colwell agrees with the jury's determination that his crimes deserve death is immaterial.

6. Counsel contends that the trial court erred by denying a defense motion seeking either to have execution by electrocution declared unconstitutional or, in the alternative, to have an evidentiary hearing on the matter. In a hearing held prior to the sentencing trial, the trial court inquired of defense counsel whether he wished to have evidentiary hearings on any of the outstanding defense motions. After an exchange between the trial court, the district attorney, and defense counsel that left unclear whether defense counsel wished to pursue the request for an evidentiary hearing on electrocution, defense counsel conferred with co-counsel and then stated that he did not think there were any evidentiary matters to be dealt with other than victim impact evidence. In light of this comment, we conclude that counsel withdrew the request for an evidentiary hearing on electrocution. In the absence of admissible evidence demanding a different result, the trial court did not err in declining to declare execution by electrocution unconstitutional. See *Esposito v. State*, 273 Ga. 183, 186 (3) (b) (538 SE2d 55) (2000).

7. Counsel contends that, should this Court affirm Colwell's death sentence, Colwell should be permitted to elect lethal injection instead of electrocution as the method by which his sentence is carried out. There is no statutory provision in Georgia that permits a person sentenced to death to choose the method of execution. Because Colwell's crimes were committed before May 1, 2000, electrocution is the statutory method of execution. OCGA § 17-10-38. Should electrocution be declared unconstitutional by this Court or the Supreme Court of the United States, lethal injection will be the means by which Colwell is executed.[3]

8. In a brief filed shortly after this appeal was docketed, counsel argued that due process concerns were raised by the trial court's failure to file the required trial judge's report. See OCGA § 17-10-35 (a); Unified Appeal Outline of Proceedings (IV) (A) (3) (a). Because the trial judge's report was subsequently transmitted to this Court as

---

[3] In an uncodified section of Ga. L. 2000, p. 947, the General Assembly stated its intention that "persons sentenced to death for crimes committed prior to [May 1, 2000] be executed by lethal injection if the Supreme Court of the United States declares that electrocution violates the Constitution of the United States or if the Supreme Court of Georgia declares that electrocution violates the Constitution of the United States or the Constitution of Georgia."

required and because counsel for Colwell and the State had ample opportunity to inform this Court of any response they might have to its contents, counsel's argument has become moot.

9. When a defendant is found guilty and sentenced for malice murder, the trial court should vacate any felony murder convictions for the same killing. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993); see also OCGA § 16-1-7 (a) (1). Accordingly, we vacate Colwell's six convictions and death sentences for felony murder.

10. The factual basis set forth in support of Colwell's guilty pleas was insufficient to authorize the trial court to enter convictions and sentences against Colwell for both the two malice murder charges *and* the two aggravated assault charges. Where, as here, the evidence proving an aggravated assault is the same as the evidence proving murder, the two crimes merge as a matter of fact. *McDade v. State*, 270 Ga. 654, 655 (1) (513 SE2d 733) (1999); *Fitzpatrick v. State*, 268 Ga. 423-424 (1) (489 SE2d 840) (1997); *Griffin v. State*, 265 Ga. 552, 553 (1) (458 SE2d 813) (1995). Accordingly, we vacate Colwell's two convictions and sentences for aggravated assault.

11. As explained below, several of the jury's findings regarding statutory aggravating factors in this case must be set aside. Doing so, however, does not affect the two death sentences affirmed in this opinion.

(a) The jury found, as to the murder of Mitchell Bell, that the OCGA § 17-10-30 (b) (7) statutory aggravating circumstance existed because (1) the murder was outrageously and wantonly vile, horrible, or inhuman in that (2) it involved depravity of mind, an aggravated battery to Mitchell Bell, and an aggravated battery to Judith Bell. The jury's finding regarding the aggravated battery to Judith Bell cannot support this statutory aggravating circumstance, which refers only to "an aggravated battery *to the victim*. . . ." (Emphasis supplied.) OCGA § 17-10-30 (b) (7). Nevertheless, the jury's other findings adequately support this statutory circumstance as to Mr. Bell's murder.

(b) The same error also appears in the jury's finding of the OCGA § 17-10-30 (b) (7) statutory circumstance regarding the murder of Judith Bell. Additionally, the jury's finding that the murder of Judith Bell was committed during the commission of an aggravated battery against Mrs. Bell cannot stand because Mrs. Bell was murdered with a single shot, albeit a single shot that first passed through her hand and that disfigured her. Nevertheless, the jury's findings that Mrs. Bell's murder was wantonly vile, horrible, or inhuman and that it involved torture and depravity of mind adequately support the OCGA § 17-10-30 (b) (7) statutory circumstance as to her murder.

(c) The jury found that the murder of Mitchell Bell was commit-

ted during the commission of the murder of Judith Bell and vice versa. See OCGA § 17-10-30 (b) (2). We have held that "mutually supporting aggravating circumstances" are impermissible. *Heidler v. State*, 273 Ga. 54, 65-66 (22) (537 SE2d 44) (2000); *Wilson v. State*, 250 Ga. 630, 638 (9) (300 SE2d 640) (1983). Since only one of the jury's findings that one murder was committed during the commission of the other murder may stand, we eliminate the jury's finding as to Mitchell Bell's murder and leave intact the jury's finding as to Judith Bell's murder. Id.

(d) After setting aside the impermissible portions of the jury's sentencing verdicts, both of the death sentences affirmed in this opinion remain supported by at least one statutory aggravating circumstance. Id.; see also *Stringer v. Black*, 503 U. S. 222, 231-232 (112 SC 1130, 117 LE2d 367) (1992).

12. Counsel contends that religious materials prepared by Colwell should not have been presented to the jury and that OCGA § 17-10-35 (c) (1) requires reversal. Colwell himself insisted on placing before the jury the religious materials now complained of by counsel. Accordingly, the issue is waived as a matter of trial court error. Compare *Carruthers v. State*, 272 Ga. 306, 308-311 (2) (528 SE2d 217) (2000) (reversing death sentence where the State had presented certain religious materials over the defendant's objection). Our review under OCGA § 17-10-35 (c) (1) is primarily designed to ensure that neither the State nor outside forces inject improper considerations into death penalty trials, but we also must consider the trial as a whole in order to ensure fundamental fairness and justice. Although Colwell's letters, the photocopied pages from the Bible accompanying his letters, and his testimony explained how certain religious texts supported suicide, the death penalty, and other forms of killing, they also offered the jury the opportunity to more fully understand Colwell's psyche. Considering all of these very unusual circumstances, we conclude that this issue provides no basis for reversal under OCGA § 17-10-35 (c) (1).

Furthermore, upon our review of the entire record, we find no other basis to conclude that the two death sentences affirmed in this opinion were imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1).

13. Counsel contends that Colwell's death sentences are disproportionate to his crimes. We disagree.

Our proportionality review includes a consideration of both the crime and the defendant. OCGA § 17-10-35 (c) (3). We consider any relevant information, including mental and social factors. See *Corn v. State*, 240 Ga. 130, 141 (III) (2) (c) (240 SE2d 694) (1977) (discussing "low mental level and social maladjustment"). Although we accept that Colwell suffers from mental illness, we find nothing in the

record to suggest he was incapable of perceiving right and wrong or of understanding the horrible consequences of his actions. The fact that he is plagued with a desire to commit suicide does not take away from the fact that he decided to serve that desire by committing two murders. It is for the means by which he chose to serve his own desire to die that he has been sentenced.

We have held the following:

> It is the reaction of the sentencer to the evidence before it which concerns this court and which defines the limits which sentencers in past cases have tolerated, whether before or after *Furman v. Georgia*[, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972)]. When a reaction is substantially out of line with reactions of prior sentencers, then this court must set aside the death penalty as excessive.

*Ross v. State*, 233 Ga. 361, 366-367 (2) (211 SE2d 356) (1974); see also *Gissendaner*, 272 Ga. at 716-717 (19) (a). Given the merciless and calculated nature of these two murders, the jury's reaction was not excessive.

Considering both the crimes and the defendant, the death penalties affirmed in this opinion were neither excessive nor disproportionate to the penalties imposed in similar cases in Georgia. OCGA § 17-10-35 (c) (3). The cases appearing in the Appendix support this conclusion in that each involved a calculated plan to murder or the murder of more than one person.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Sears, J., who dissents to Divisions 6 and 7 and to the affirmance of the death penalty insofar as it requires death by electrocution.*

## APPENDIX.

*Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Gissendaner v. State*, 272 Ga. 704 (532 SE2d 677) (2000); *Morrow v. State*, 272 Ga. 691 (532 SE2d 78) (2000); *Pace v. State*, 271 Ga. 829 (524 SE2d 490) (1999); *Gulley v. State*, 271 Ga. 337 (519 SE2d 655) (1999); *Palmer v. State*, 271 Ga. 234 (517 SE2d 502) (1999); *Cook v. State*, 270 Ga. 820 (514 SE2d 657) (1999); *Mize v. State*, 269 Ga. 646 (501 SE2d 219) (1998); *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *McMichen v. State*, 265 Ga. 598 (458 SE2d 833) (1995); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Gary v. State*, 260 Ga. 38 (389 SE2d 218) (1990); *Isaacs v. State*, 259 Ga. 717 (386 SE2d 316) (1989); *Ford*

*v. State,* 257 Ga. 461 (360 SE2d 258) (1987); *Childs v. State,* 257 Ga. 243 (357 SE2d 48) (1987); *Romine v. State,* 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State,* 255 Ga. 616 (340 SE2d 891) (1986); *Rivers v. State,* 250 Ga. 303 (298 SE2d 1) (1982); *Waters v. State,* 248 Ga. 355 (283 SE2d 238) (1981); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976).

SEARS, Justice, concurring in part and dissenting in part.

I concur in the majority's findings that the trial court correctly entered judgment on appellant's guilty pleas, and that the evidence presented at the sentencing hearing authorized the jury to find the existence of at least one statutory aggravating circumstance beyond a reasonable doubt. However, due to the concerns I expressed in my partial dissent to *Wilson v. State,*[4] I dissent to Divisions 6 and 7 of the majority opinion and to the majority opinion's affirmance of the death penalty only to the extent that it requires death by electrocution.

DECIDED MARCH 2, 2001 —
RECONSIDERATION DENIED APRIL 5, 2001.

*Kenneth D. Driggs, Michael Mears,* for appellant.

*John R. Parks, District Attorney, Daniel P. Bibler, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Patricia A. Burton, Assistant Attorney General,* for appellee.

Ronald S. Honberg, Rex W. Cowdry, *amici curiae.*

---

[4] 271 Ga. 811 (525 SE2d 339) (1999).